IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

COMMODITY FUTURES TRADING COMMISSION,

Plaintiff,

v.

PENSION AMERICA, INC., SELECTIVE FUTURES MANAGEMENT, LLC, FUTURES PROFIT MAKING, LLC, SPECIALIZED COMMODITY TIMING, LLC, COMMODITY TIMING SPECIALISTS, LLC, EDWARD STEVENSON KIRRIS III, LEONARD G. NAUMAN D/B/A NAUMAN ADVISORY SERVICES and WILLIAM RELF,

Defendants,

and

KIDZ FIRST INTERNATIONAL, INC.,

Relief Defendant.

Civil Action No.
00-2071 RHK/SRN

ORDER OF PRELIMINARY INJUNCTION
AND OTHER ANCILLARY RELIEF AGAINST DEFENDANTS
WILLIAM J. RELF, SPECIALIZED COMMODITY TIMING, LLC
AND COMMODITY TIMING SPECIALISTS, LLC

Plaintiff, Commodity Futures Trading Commission ("CFTC" or "Commission") on September 6, 2000, filed a complaint against the defendants, Pension America, Inc. ("PAI"), Futures Profit Making, LLC ("FPM"), Selective Futures Management, LLC ("SFM"), Specialized Commodity Timing, LLC ("SCT"), Commodity Timing Specialists ("CTS"), Edward Stevenson Kirris, III ("Kirris"), Leonard G. Nauman d/b/a Nauman Advisory Services ("Nauman") and William J. Relf ("Relf") (collectively, the "defendants") seeking injunctive and other equitable relief, as well as the imposition of

FILED SEP 15 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

civil penalties, for violations of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. §§ 1 et seq. (1994), and the Commission Regulations promulgated thereunder, 17 C.F.R. §§ 1 et seq. (1997). The Court entered a Statutory Restraining Order on September 7, 2000.

This Court has considered the complaint, declarations, exhibits, brief in support of the motion for statutory restraining order and other papers filed herein, and the Court being fully advised in the premises.

THE COURT FINDS:

1. This Court has jurisdiction over the subject matter of this action and the parties pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

2. Venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1(e), in that the defendants are found in, inhabit, or transact business in this district, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this district, among other places.

3. Plaintiff Commission is an independent federal regulatory agency charged with the responsibility for administering and enforcing the provisions of the Act, 7 U.S.C §§ 1 et seq. (1994), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 et seq. (1997).

4. Defendant Specialized Commodity Timing is a limited liability company formed exclusively for the purpose of operating a commodity pool. Until November 1999, SCT shared office space with PAI, FPM, SFM and CTS. It is now located at 772 Holden Lane, Hudson, Wisconsin 53406. SCT has never been registered with the Commission in any capacity.

5. Defendant Commodity Timing Specialists is a limited liability company formed exclusively for the purpose of operating a commodity pool. Until November 1999, CTS shared office space with PAI, FPM, SFM and SCT. It is now located at 3 Dellwood Lane, St. Paul, MN 55128. CTS has never been registered with the Commission in any capacity.

6. Defendant William J. Relf, whose address is 772 Holden Lane, Hudson, Wisconsin 53406, controls and operates the SCT pool. He also solicited investors for the CTS pool. Relf has never been registered with the Commission in any capacity.

THE SCT AND CTS POOLS

The verified facts and sworn testimony regarding the SCT and CTS Pools show that:

7 From 1997 to the present, an individual and Relf solicited, accepted and pooled at least $200,000 from at least seven public investors who primarily reside in the Minnesota area for the purpose of trading commodity futures in the SCT pool and approximately $113,500 from at least eight public investors primarily in the Minnesota area for the purpose of trading commodity futures in the CTS pool.

8. Other individuals and Relf received personal checks and wire transfers in person and through the mail, intended for investment in the SCT and CTS pools. Investor funds were commingled with funds of other entities they owned and operated.

9. In November 1999, Relf and others took over operation of the SCT and CTS pools.

10. From 1997 to the present, and in connection with soliciting and/or receiving money for investment in commodity futures contracts, other individuals and Relf made some or all of the following false representations to investors and potential investors in the SCT and CTS pools, verbally and in writing:

> a). all investor money would be used and was being pooled with other investor money to trade commodity futures in accounts at an FCM;
>
> b). Others and Relf were experienced and successful commodity traders who regularly make profitable returns of up to 40% annually;
>
> c). investors would earn an annual return of 40% on their investments in SCT and CTS;
>
> d). investment in the SCT and CTS pools was not risky, other individuals and Relf could limit the risks of commodity futures trading by their method of trading.

11. Relf knew that the facts alleged in paragraph 10 were false, or had no reasonable basis to make such representations, but did so willfully in reckless disregard of the truth.

12. Relf represented to SCT and CTS investors that neither he nor others would receive any fees or commissions for trading the pools. Rather, he and others told investors that the first 25% return that the SCT and CTS pools earned in a year would go to SCT and CTS investors. Relf and others would split the next 25% of the profits that

the SCT and CTS pools earned for the year with investors and would take all of the profits after the SCT and CTS pools earned a 50% return for the year. Relf and others did not adhere to this. Instead, other individuals and Relf withdrew funds from the SCT and CTS trading accounts for personal and company operating expenses regardless of trading profits.

13. Relf did not deliver a Disclosure Document to prospective pool participants in connection with his solicitation of commodity pool investors. A Disclosure Document provides prospective pool participants with information needed in order to make informed investment decisions and must contain the information set forth in Regulation 4.24, 17 C.F.R. § 4.24 (1997), including risk disclosures and performance data, such as the SCT and CTS pools' actual performance since its inception, the performance of any other pools operated, and the performance of any other accounts traded, by Relf. If Relf had not previously operated any other pools or traded any other accounts, a statement to that effect should have been included in a Disclosure Document.

14. Relf and others periodically prepared and mailed account statements to SCT and CTS investors purporting to show the status of their investments. These statements did not uniformly report the same trading results to all investors. Some of these account statements falsely stated that profits, in the range of 25% - 27% annually, had been generated from futures trading and overstated the value of each investor's share of the pool. Other statements showed trading losses, but did not accurately reflect the losses that SCT and CTS had suffered. All of these statements were false and Relf knew them to be false at the time he made them.

15 Relf did not provide investors with profit and loss statements that he received from the FCMs carrying the SCT and CTS trading accounts.

16. Relf informed SCT and CTS investors that in August 2000 an investor was solicited who invested $95,000 in the SCT and CTS pools. Relf has also recently asked investors if they know of anyone else who would be interested in investing in SCT and CTS.

17. Earlier this year, SCT and CTS investors requested their money back. Relf and others asked them not to withdraw their money and promised them that they would earn a significant return on their investment through another individual's commodity futures trading. In fact, since May 2000, the SCT and CTS accounts have consistently lost money.

Defendants' Claims Of Exemption From Registration With The Commission

The verified facts and sworn testimony regarding defendants Relf, SCT and CTS's claims of exemption from registration with the Commission show that:

18. On or about December 21, 1998, Relf signed a letter for the SCT pool and on or about February 2, 1999, an individual drafted a letter for the CTS pool. The letters claimed exemption from the Commission's CPO registration requirement. An individual and Relf provided the letters to the Commission and SCT and CTS pool investors.

19. The SCT and CTS pools were not exempt from registration with the Commission because other individuals and Relf operated the other commodity pools and the SCT and CTS pools at the same time, and all four pools had at least 36 investors and total gross capital contributions of over $600,000.

Violations of the Commodity Exchange Act and Regulations

20. By the conduct described in paragraphs 1 through 19 above, defendants Relf, SCT and CTS violated Section 4b(a)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(i) and (iii), in that from 1997 to the present they cheated or defrauded or attempted to cheat or defraud investors or prospective investors by misappropriating funds received from investors; misrepresenting to investors that all their funds were going to be used to trade commodity futures when they were not; misrepresenting their prior trading success to potential investors and promising them profitable trading while claiming to be able to limit risks; misrepresenting to investors the profits and the value of each investor's share of the pools; and sending letters to investors and the Commission misrepresenting that they were exempt from registration with the Commission as CPOs when they were not.

21. By the conduct described in paragraphs 1 through 19 above, Relf violated Section 4b(a)(ii) of the Act, 7 U.S.C. § 6b(a)(ii), in that from 1999 to the present, he willfully made or caused to be made to investors in the SCT and CTS pools written reports or statements which falsely represented the profits, losses and the value of each investor's share of the pools. Relf also sent letters to investors and the Commission misrepresenting that he was exempt from registration with the Commission as a CPO when he was not. These false reports or statements were made in connection with orders to make, or the making of, contracts of sale of commodities for future delivery made or to be made for or on behalf of other persons.

22. By the conduct described in paragraphs1 through 19 above, Relf violated

Section 4m(1) of the Act, 7 U.S.C. § 6m(1), in that:

> a). From 1999 to the present, Relf solicited, accepted, pooled and controlled funds from investors for the purpose of investing in commodity interests without being registered with the Commission as a CPO, as required by Section 4m(1) of the Act, and made use of the mails or other means or instrumentalities of interstate commerce in connection with his business as a CPO; and

23. By the conduct described in paragraphs 1 through 19 above, defendant Relf violated Section 4o(1) of the Act, 7 U.S.C. § 6o(1), in that from 1999 to the present, Relf, while acting as a CPO, employed one or more devices, schemes, or artifices to defraud pool participants or prospective pool participants, or engaged in transactions, practices or a course of business which operated as a fraud or deceit upon pool participants or prospective pool participants by use of the mail or other means or instrumentalities of interstate commerce to: misappropriate funds received from investors; misrepresent to investors that all their funds were going to be used to trade commodity futures when they were not; misrepresent his prior trading success to potential investors and promise them profitable trading while claiming to be able to limit risks; misrepresent to investors the profits and the value of each investor's share of the SCT and CTS pools; and send letters to investors and the Commission misrepresenting that he was exempt from registration with the Commission as a CPO when he was not.

24. By the conduct described in paragraphs 1 through 19 above, defendants Relf, SCT and CTS violated Section 4n(4), 7 U.S.C. § 6n(4) (1994) of the Act and Regulation 4.22, 17 C.F.R. § 4.22 (2000), in that from 1999 to the present, while acting as CPOs, they failed to furnish accurate and appropriate statements of account to pool

participants containing the information required by Regulation 4.22 and by failing to provide account statements to participants at least quarterly.

25. By the conduct described in paragraphs 1 through 19 above, defendants Relf, SCT and CTS violated Regulation 4.21, 17 C.F.R. § 4.21, by accepting funds or property without first delivering to investors appropriate disclosure documents and obtaining signed acknowledgments of receipts of disclosure documents from investors.

26. It further appears to the satisfaction of this Court that unless defendants Relf, SCT and CTS are enjoined as provided in this Order, defendants Relf, SCT and CTS will continue to engage in fraudulent practices in connection with commodity futures trading, will continue to solicit and accept funds for commodity futures trading, and will therefore continue to violate the Act, causing further irreparable injury to the public.

27. The plaintiff has demonstrated a probability of success on the merits of this complaint.

IT IS THEREFORE ORDERED THAT:

1. Defendants Relf, SCT and CTS are hereby restrained, enjoined and prohibited from directly or indirectly:

> a). Cheating or defrauding or attempting to cheat or defraud other persons, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, for or on behalf of any other person if such contract for future delivery is or may be used for (a) hedging any transaction in interstate commerce in such commodity or the products or by products thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof, in violation of Section 4b(a)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(i) and (iii);

b). Willfully making or causing to be made to such other person any false report or statement thereof in violation of Section 4b(a)(ii) of the Act, 7 U.S.C. §6b(a)(ii).

c). Employing any device, scheme, or artifice to defraud any pool participants or prospective pool participants, or engaging in any transaction, practice, or course of business which operates as a fraud or deceit upon any pool participants or prospective pool participants, in the course of their activities as commodity pool operators ("CPO") by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly in violation of Section 4o(1) of the Act, 7 U.S.C. §6o(1);

d). Operating as CPOs engaged in the business of soliciting, accepting or receiving from others, funds, securities, or property, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market without being registered with the Commission as a commodity pool operator, in violation of Section 4m(1) of the Act, 7 U.S.C. §6m(1); and

2. Defendant Relf is hereby restrained, enjoined and prohibited from directly or indirectly:

a). Depositing funds, securities, or other property from an existing or prospective pool investor intended for investment in the SCT and CTS pools into his personal bank accounts and bank accounts in the name of SCT and CTS, in violation of Regulation 4.20(c), 17 C.F.R. § 4.20(c).

b). failing to deliver to prospective pool participants a Disclosure Document in violation of Regulation 4.21, 17 C.F.R. §4.21.

3. Defendants Relf, SCT and CTS are enjoined and prohibited from directly or indirectly:

a). Soliciting, receiving or accepting any funds from any person in connection with the purchase or sale of any commodity futures contract;

b). Soliciting, accepting or placing orders, giving advice or price quotations or other information in connection with the purchase or sale of commodity futures contracts for themselves or others, introducing customers to any other person engaged in the business of commodity futures trading, issuing statements or reports to others concerning

commodity futures trading, and otherwise engaging in any business activities related to commodity futures trading;

c). Controlling or directing the trading for any commodity futures or commodity options account for or on behalf of any other person or entity, whether by power of attorney or otherwise;

d). Trading commodity futures or commodity options for their own accounts or having any commodity futures or commodity options traded on their behalf; and

e). Seeking registration with the Commission in any capacity under the Act and acting in any capacity for which registration with the Commission is required under the Act.

4. Defendants Relf, SCT and CTS are enjoined and prohibited from directly or indirectly:

a). Withdrawing, transferring, removing, dissipating, concealing or disposing of, in any manner, any funds, assets, chooses in action, or other property, wherever situated, including but not limited to, all funds, personal property, money or securities held in safes, safety deposit boxes and all funds on deposit in any financial institution, bank, or savings and loan account held by, under the control, or in the name of defendants Relf, SCT and CTS, including funds or property of investors wherever located, and the assets affected by this paragraph shall include both existing assets and assets acquired after the effective date of this Order, and this Order shall remain in effect until such time as the Court orders a distribution of same; and

b). Destroying, mutilating, concealing, altering or disposing of, or refusing to permit authorized representatives of the Commission to inspect, when and as requested, any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of defendants Relf, SCT and CTS, wherever located, including all such records concerning defendants Relf, SCT and CTS' business operations.

5. It is further ordered that the injunctive provisions of this Order shall be binding upon defendants Relf, SCT and CTS and upon any person insofar as he or she is acting in the capacity of officer, agent, servant, employee or attorney of defendants Relf,

SCT and CTS, and upon any person who receives actual notice of this Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with defendants Relf, SCT and CTS. This order may be served on any such person or entity by facsimile transmission.

6. Defendants Relf, SCT and CTS shall allow representatives of the Commission immediate and continuing access to inspect or immediately copy the books, records, and other documents of defendants Relf, SCT and CTS and their agents, including all such records of their business operations, wherever they may be situated and whether they are in the possession of defendants Relf, SCT and CTS or others.

7. Defendants Relf, SCT and CTS shall prepare, sign and file with the Court, within 45 days of this Order, a complete and accurate accounting for the period of January 1, 1997 to the date of such accounting, which shall be no earlier than the date of this Order. Such accounting shall include, without limitation, the identification of:

a. All funds, securities, commodity interests, assets and other property currently owned or controlled (legally, equitably or otherwise) directly or indirectly by Relf, SCT and CTS, whether individually or jointly;

b. All funds, securities, commodity interests, assets and other property received directly or indirectly by Relf, SCT and CTS, whether individually or jointly, describing the source, amount, disposition, and current location of each listed item;

c. All funds, securities, commodity interests, assets and other property transferred or otherwise disposed of directly or indirectly by Relf, SCT and CTS, whether individually or jointly, describing the source, amount, disposition, and current location of each listed item; and

c. The name and last known address of each bailee, debtor or other

person or entity currently holding any funds, securities, commodity interests, assets or other property owned or controlled (legally, equitably or otherwise) by Relf, SCT and CTS, either individually or jointly.

8. Defendants Relf, SCT and CTS shall prepare and file with the Court, within thirty (30) days of the date of this Order, a preliminary accounting for the period January 1, 1997 to the date of such accounting. The accounting shall include the following: (1) all of the defendants Relf, SCT and CTS' assets and liabilities, identifying their value, nature and location, including but not limited to all real and personal property, and all bank, credit union, checking, commodity or security accounts, either directly or indirectly under the possession or control of defendants Relf, SCT and CTS, wherever situated; (2) For any corporation owned or controlled by defendants Relf, SCT and CTS, all of their assets and liabilities, identifying their value, nature and location, including but not limited to all real and personal property, and all bank, credit union, checking, commodity or security accounts, either directly or indirectly under the possession or control of defendants Relf, SCT and CTS, wherever situated; (3) transfers of real and personal property; (4) all salaries, commissions, fees, loans, and other disbursements of money and property of any kind, in or in connection with commodity futures or options transactions or purported commodity futures or options transactions; and (5) all customer funds received and disbursed by or on behalf of defendants in connection with all commodity futures or options transactions, purported commodity futures or options transactions, or operation or purported operation of commodity pools. The accounting shall be made under oath attesting to a full and complete accounting and shall be signed by

defendants Relf, SCT and CTS. A copy of the accounting shall be provided to the plaintiff.

9. Each firm, corporation, partnership, association, or other person or entity which holds, or which is a depository of, funds, securities, property, or other assets of or under the control of defendants Relf, SCT and CTS, or any of them, including funds and property of their customers, is prohibited from transferring, withdrawing, removing, or disposing of any such funds, securities, property or other assets until further order of the Court.

IT IS FURTHER ORDERED that this Order shall continue in effect until further order of the Court.

IT IS SO ORDERED.

United States District Court Judge

DATED: September 15, 2000