**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Commodity Futures Trading Commission,**

**Plaintiff,**

**v.**

**Pension America, Inc,**
**Futures Profit Making, LLC,**
**Selective Futures Management, LLC,**
**Specialized Commodity Timing, LLC,**
**Edward Stevenson Kirris, III,**
**Leonard G. Nauman d/b/a**
**Nauman Advisory Services and**
**William Relf, Kidz First International, Inc.**

**Defendants.**

**Civil No.00-2071 (RHK/SRN)**

**REPORT AND RECOMMENDATION**

---

Susan J. Gradman, Esq. on behalf of Plaintiff.

Timothy D. Moratzka, Esq., appearing as Trustee for the Bankruptcy Estate of Leonard G. Nauman.

William J. Otteson, Esq. appearing as Limited Receiver for Kidz First International, Inc.

Leonard G. Nauman, appearing pro se.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on February 6, 2001, on Plaintiff Commodity Futures Trading Commission's Motion for the Sale of the Assets of Kidz First International, Inc. (Doc. No. 33.) This motion has been referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, this Court recommends that Plaintiff's Motion for the Sale of the Assets of

FILED MAR 27 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

Kidz First International, Inc. be granted in all respects.

## I. BACKGROUND

Pursuant to the advice from Defendant Nauman and others, members of the public wrote checks to Futures Profit Making ("FPM") and Selective Futures Management ("SFM") for the purpose of trading commodity futures. (Pl.'s Mem., Doc. No. 33, Exs. B, C, D, E.) In addition, to his work with the commodity pools, Defendant Nauman also founded Kidz First International, Inc. ("KFI"), which manufactures, sells, and markets bicycle seats for children. (Compl. ¶ 3.) The Complaint asserts that Defendant Nauman transferred commodity funds, without the knowledge or consent of the investors, to bank and futures trading accounts in KFI's name. (Id.)

## II. ANALYSIS

Plaintiff, Commodity Futures Trading Commission ("Commission"), seeks to disgorge Relief Defendant KFI of unjustly obtained funds by bringing this Motion for the Sale of KFI's Assets. (Doc. No. 33.) The Supreme Court of the United States has recognized that actions to disgorge improperly gained profits, Tull v. United States, 481 U.S. 412, 424, 107 S. Ct. 1831, 1839, 95 L.Ed.2d 365 (1987), to return funds rightfully belonging to another, Curtis v. Loether, 415 U.S. 189, 197, 94 S. Ct. 1005, 1010, 39 L.Ed.2d 260 (1974) or to submit specific funds wrongfully withheld, Bowen v. Massachusetts, 487 U.S. 879, 893-96, 108 S. Ct. 2722, 2731-33, 101 L.Ed.2d 749 (1988), are all equitable actions. District courts have wide discretion when exercising their equity powers. See United States v. Akbani, 151 F.3d 774, 779 (8th Cir. 1998).

The Commission asserts that Defendant Nauman diverted funds invested in two commodity pools, FPM and SFM, into accounts in the name of KFI, without the investors' knowledge or consent. (Pl.'s Mem., Doc. No. 33, p. 2.) Ken Hampton, a Futures Trading Investigator, reviewed bank statements, cancelled checks, wire transfer advices, profit and loss statements, and other bank records of FPM, SFM, KFI and other accounts that Defendant Nauman had access to, and determined that KFI received at least $120,000 in investor funds intended for the investment commodity pools. (Hampton Declaration, Doc. No. 34, ¶¶ 3, 4, 5.) In addition, at least $98,975 was indirectly transferred from FPM and SFM bank accounts in the name of Pension America, Inc. ("PAI") and then into the bank account of KFI. (Id.)

Defendant Nauman argues that the Commission's statements are false and unsupported by the facts. (Nauman Resps., Doc. No. 44, p. 2.) However, Defendant Nauman does not offer any evidence, other than his own statements, to disprove the Commission's evidence. Rather, Defendant Nauman asks that the Court deny the Commission's motion and order the Limited Receiver to assist KFI in finding a buyer or investor so that KFI can be a viable business, thereby maximizing the return for shareholders. (Id., pp. 1-2.) Despite this proposed solution, Mr. Nauman has failed to explain or disprove the Commission's assertion that KFI improperly received investor funds intended for commodity pools, an assertion that is supported by the investigator's report, the bank statements and the cancelled checks. Therefore, the Court finds that KFI received funds that were intended for commodity pools and recommends that KFI's assets should be disgorged.

According to the Limited Receiver, KFI has no significant cash or other liquid assets.

KFI's principal assets are approximately 4,000 child bicycle seats, the "FUNRIDER." (Pl.'s Ex. A., Otteson Aff., Doc. No. 33, ¶ 3.) Mr. Nauman estimates the retail value of this inventory to be $600,000. (Nauman Aff., Doc. No. 42, p. 2.) The Limited Receiver, the Futures Trading Investigator, and the Bankruptcy Trustee all question this valuation. (Id.) The Limited Receiver found that, "the FUNRIDER, while garnering some favorable initial attention when it was first rolled out in the mid-1990s, has not attracted significant market interest since then." (Pl.'s Ex. A., Otteson Aff., Doc. No. 33, ¶ 4.) According to Investigator Hampton, the liquidators and wholesalers that he spoke with were willing to pay approximately $5 each for the assembled FUNRIDERs and approximately $1 each for the unassembled FUNRIDERs. (Declaration of Ken Hampton, Doc. No. 46, ¶ 6.) The Bankruptcy Trustee stated that it "had no objection to the liquidation of Kidz assets" and that "It would be appropriate to rely on the record made by the CFTC as to the value of the inventory." (Bankruptcy Trustee Resps., Doc. No. 45, ¶ 12.) In addition, to the FUNRIDER inventory, KFI has other minor assets such as office furniture, storage fixtures, and computer and media equipment with a net book value of approximately $33,216. (Pl.'s Ex. A., Otteson Aff., Doc. No. 33, ¶ 6.) It is also recommended that these assets, in addition to the inventory, be disgorged.

## III. CONCLUSION

Accordingly, for the foregoing reasons, and based upon all of the files, records, and proceedings herein, it is hereby recommended that

1. Plaintiff's Motion for the Sale of Kidz First International Inc.'s Assets (Doc. No. 33) be **GRANTED**;

2. The Limited Receiver be authorized to take immediate possession of and sell the

assets of Kidz First International, Inc.;

a. Pursuant to Judge Richard H. Kyle's November 28, 2000, and December 20, 2000, Orders (Doc. Nos. 32, 36) the Limited Receiver be authorized to obtain $10,183.57 in fees from the assets of Kidz First International, Inc.; and

b. Any remaining funds be set aside in a deposit account until the conclusion of this matter.

Dated: March 26, 2001

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation within 10 days after being served with a copy thereof. The objecting party must file with the Clerk of the Court and serve on all parties, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.