IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

COMMODITY FUTURES TRADING COMMISSION,

Plaintiff,

v.

PENSION AMERICA, INC., SELECTIVE FUTURES MANAGEMENT, LLC, FUTURES PROFIT MAKING, LLC, SPECIALIZED COMMODITY TIMING, LLC, COMMODITY TIMING SPECIALISTS, LLC, EDWARD STEVENSON KIRRIS III, LEONARD G. NAUMAN D/B/A NAUMAN ADVISORY SERVICES and WILLIAM RELF,

Defendants,

and

KIDZ FIRST INTERNATIONAL, INC.,

Relief Defendant.

Civil Action No.
00-2071 RHK/SRN

CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AGAINST DEFENDANTS LEONARD G. NAUMAN, PENSION AMERICA, INC. AND FUTURES PROFIT MAKING, LLC

**I.**

Plaintiff, Commodity Futures Trading Commission ("CFTC" or "Commission"), filed a complaint against defendants Pension America, Inc. ("PAI"), Futures Profit Making, LLC ("FPM"), Selective Futures Management, LLC ("SFM"), Specialized Commodity Timing, LLC ("SCT"), Commodity Timing Specialists ("CTS"), Edward Stevenson Kirris, III ("Kirris"), Leonard G. Nauman d/b/a Nauman Advisory Services ("Nauman") and William Relf ("Relf") (collectively the "defendants") and relief defendant Kidz First International, Inc. ("KFI") on September 6, 2000, seeking injunctive and other equitable relief for violations of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. §§ 1 et seq. (2001), and Regulations promulgated

MAR 0 4 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

thereunder, 17 C.F.R. §§ et seq. (2001). On September 7, 2000, this Court entered a Statutory Restraining Order against the defendants and relief defendant, and on September 15, 2000, this Court entered Consent Orders of Preliminary Injunction against Nauman, Kirris, PAI, FPM, SFM and KFI and an Order of Preliminary Injunction against Relf, SCT and CTS. On July 2, 2001, this Court entered a Consent Order of Permanent Injunction and Other Equitable Relief Against Defendants Relf, SCT and CTS and on July 5, 2001, this Court entered A Consent Order of Permanent Injunction and Other Equitable Relief Against Defendants Kirris, and SFM. Entry of this Consent Order would conclude this action as to all defendants.

## II.

## CONSENTS AND AGREEMENTS

To effect settlement of the matters alleged in the Complaint against Nauman, PAI and FPM without a trial on the merits or any further judicial proceedings, defendants Nauman, PAI and FPM:

1. Consent to the entry of this Consent Order of Permanent Injunction and Other Equitable Relief Against Defendants Nauman, PAI and FPM ("Order").

2. Affirm that Nauman, PAI and FPM have agreed to this Order voluntarily, and that no promise or threat has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Order, other than as set forth specifically herein.

3. Acknowledge service of the Summons and Complaint.

4. Admit jurisdiction of this Court over them and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2001).

5. Admit that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2001).

6. Waive:

a. the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, except as set forth below;

b. all claims which they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (1994) and 28 U.S.C. § 2412 (1994), as amended by Pub. L. No. 104-121, §§ 231-32, 110 Stat. 862-63, and Part 148 of the Regulations, 17 C.F.R. § 148.1, et seq. (2001), relating to, or arising from, this action;

c. any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and

d. all rights of appeal from this Order.

7. By consenting to the entry of this Order, defendants Nauman, PAI and FPM neither admit nor deny the allegations of the Complaint except as to jurisdiction and venue, which they admit. Nauman, PAI and FPM agree that they will not take any action or make any public statement denying, directly or indirectly, any allegations of the Complaint or findings or conclusions in this Order, or creating or tending to create, the impression that the Complaint or Order is without a factual basis; provided, however, that nothing in this provision shall affect Nauman's, PAI's and FPM's (i) testimonial obligations, or (ii) their rights to take legal positions in other proceedings to which the Commission is not a party. Nauman, PAI and FPM will undertake all steps necessary to assure that all of their agents, employees and representatives understand and comply with this agreement.

8. Nauman, PAI and FPM consent to the continued jurisdiction of this Court for the purpose of enforcing the terms and conditions of this Order and for any other purposes relevant to this case.

## III.

## FINDINGS AND CONCLUSIONS

It further appearing to this Court that there is no just reason for delay, and the Court being fully advised in the premises, the Court finds that there is good cause for the entry of this Order that fully disposes of all issues in this matter, THE PARTIES AGREE AND THE COURT FINDS THAT:

1. This Court has jurisdiction over Nauman, PAI and FPM and the subject matter of this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2001), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

2. Venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2001), in that Nauman, PAI and FPM are found in, inhabit, or transact business in this district, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this district, among other places.

## IV.

## ORDER FOR PERMANENT INJUNCTION

Pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, IT IS HEREBY ORDERED THAT:

1. Nauman, PAI and FPM are permanently restrained, enjoined and prohibited from directly or indirectly:

a. cheating or defrauding or attempting to cheat or defraud other persons, and willfully deceiving or attempting to deceive other persons by any means whatsoever, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, for or on behalf of any other person if such contract for future delivery is or may be used for (A) hedging any transaction in interstate commerce in such commodity or the products or byproducts thereof, or (B) determining the price basis of any transaction in interstate commerce in such commodity, or (C) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof, in violation of Section 4b(a)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(i) and (iii);

b. willfully making or causing to be made to another person any false report or statement thereof, in violation of Section 4b(a)(ii) of the Act, 7 U.S.C. § 6b(a)(ii);

c. acting as commodity pool operators ("CPOs") without being registered as such under the Act and using the mails or any means or instrumentality of interstate commerce in connection with their business as CPOs, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1);

d. employing any device, scheme, or artifice to defraud any pool participant or client or prospective client or prospective pool participant, or engaging in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or pool participant or prospective client or prospective pool participant, while acting as CPOs, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, in violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1);

e. as CPOs, soliciting, accepting or receiving funds, securities, or other property from prospective pool participants, without delivering to prospective pool participants a pool Disclosure Document containing the information set forth in Regulation 4.24, 17 C.F.R. § 4.24, in violation of Regulation 4.21, 17 C.F.R. § 4.21; and

f. as CPOs, commingling the property of any pool that they operate or intend to operate with the property of any other person, in violation of Regulation 4.20(c), 17 C.F.R. § 4.20(c).

2. Nauman shall be permanently restrained, enjoined and prohibited from directly or indirectly:

a. acting as a commodity trading advisor ("CTA") where registration as a CTA is required, without being registered with the Commission as a CTA, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1); and

b. employing any device, scheme, or artifice to defraud any pool participant or client or prospective client or prospective pool participant, or engaging in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or pool participant or prospective client or prospective pool participant while acting as a CTA, by

use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, in violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1).

3. Nauman, PAI and FPM shall be permanently restrained, enjoined and prohibited from directly or indirectly:

a. trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29)(2001); except that Nauman shall only be prohibited from entering into or directing, directly or indirectly, any commodity interest transaction for his own account or for any account in which he has a direct or indirect interest, for ten years from the date of this Order or until Nauman makes payment in full of the restitution plus post-judgment interest thereon as specified in Section V, Paragraphs 1, 2 and 4, below, whichever occurs first;

b. engaging in, controlling or directing the trading for any commodity futures or options account for or on behalf of any other person or entity, whether by power of attorney or otherwise; and

c. applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.41 (a)(9), 17 C.F.R. § 4.41(a)(9) (2001), or acting as a principal, agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.41 (a)(9), 17 C.F.R. § 4.41(a)(9) (2001). This includes, but is not limited to, soliciting, accepting or receiving any funds, revenue or other property from any person, giving commodity trading advice for compensation, except as provided for in Regulation 4.41 (a)(9), 17 C.F.R. § 4.41(a)(9) (2001), or soliciting prospective customers, related to the purchase or sale of any commodity futures or options on commodity futures contracts.

4. The injunctive provisions of this Order shall be binding upon Nauman, PAI and FPM, upon any person insofar as he or she is acting in the capacity of officer, agent, servant or employee of Nauman, PAI and FPM and upon any person who receives actual notice of this Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with Nauman, PAI and FPM.

## V.

## ORDER FOR OTHER EQUITABLE RELIEF

IT IS FURTHER ORDERED THAT:

1. RESTITUTION: Nauman and PAI shall be jointly and severally liable for $556,452 in restitution. FPM shall be jointly and severally liable with Nauman and PAI for $68,800 of that restitution amount. Nauman, PAI and FPM shall pay postjudgment interest from the date of this Order until their restitution obligations are paid in full, at the Treasury Bill rate prevailing on the date of this Order, pursuant to 28 U.S.C. § 1961(a). PAI's restitution obligation shall be offset by any restitution made by defendants Nauman, Kirris, Relf, FPM, SFM, SCT or CTS to investors in the FPM, SFM, SCT and CTS pools, and Nauman's restitution obligation shall be offset by any restitution made by defendants Kirris, Relf, PAI, FPM, SFM, SCT or CTS to investors in the FPM, SFM, SCT and CTS pools. FPM's restitution obligation shall be offset by any restitution made by defendants Nauman, Kirris and PAI to investors in the FPM pool. In any event, neither PAI nor Nauman shall pay total restitution of more than $556,452 plus postjudment interest thereon, and FPM shall not pay total restitution of more than $68,800 plus postjudment interest thereon. The persons to whom the restitution amounts shall be paid and the principal amounts of restitution owed to each are set forth in Attachment A hereto, parts I, II, III, IV and V. Omission from Attachment A shall in no way limit the ability of any investor from seeking recovery from Nauman, PAI or FPM or any other person or entity. Further, the amounts contained in Attachment A shall not limit the ability of any investor from proving that a greater amount is owed from Nauman, PAI or FPM or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any investor that exist under state or common law.

2. PAYMENT OF RESTITUTION: Restitution shall be made as follows:

a. Trading accounts in the names of the SCT and CTS pools, for which Nauman and Relf are the authorized signatories, with the ability to withdraw funds, are currently located at Lind-Waldock, a division of Refco, LLC ("Lind-Waldock"). These accounts have a total current balance of $13,153.37. If Relf signs the necessary documents, Nauman shall immediately sign the necessary documents and direct Lind-Waldock to liquidate these accounts and distribute the proceeds to investors in the SCT and CTS pools on a pro-rata basis as outlined in Attachment A hereto, part V. Nauman is under no obligation to sign the necessary documents if Relf does not also sign them. Lind-Waldock shall notify the Commission in writing that it has liquidated the accounts and distributed the proceeds to investors, sent to Susan Gradman, Trial Attorney, CFTC Division of Enforcement, 525 West Monroe, Suite 1100, Chicago, IL 60661. At such time, the restitution amounts owed by PAI and Nauman, as described above, and the restitution amounts owed by Kirris, Relf, SCT and CTS as described in the consent orders concerning Relf, SCT and CTS and Kirris and SFM that this Court entered on July 2 and July 5, 2001, respectively, shall be reduced by the $13,153.37.

b. FPM currently owns a tract of land in Ladysmith, Wisconsin valued at approximately $30,000 and two automobiles, a 1988 Alfa Romeo Spider valued at approximately $6,000 and a 1992 Volvo 740 wagon valued at approximately $12,000. FPM shall immediately take steps to sell these assets for fair market value in arms length transactions and upon such sale shall submit the proceeds to an account designated by a monitor identified in paragraph d below ("the Monitor"), who will distribute them to investors in the FPM pool in accordance with attachment A hereto, part III. If FPM fails to sell the assets and submit the proceeds to the Monitor within 180 days from the date of this order, FPM and Nauman shall turn the property over to the United States Marshalls Office in the District of Minnesota which shall sell the property and submit the proceeds to the Monitor for distribution. The restitution amounts owed by FPM, PAI and Nauman shall be reduced by the amount distributed to investors.

c. Nauman, PAI and FPM shall each make an annual restitution payment ("Annual Restitution Payment") to the Monitor of: (1) a percentage of their adjusted gross income (as defined by the Internal Revenue Code) earned or received by them during the previous calendar year, plus (2) all other cash receipts, cash entitlements or proceeds of non-cash assets received by them during the previous calendar year except for funds received pursuant to documented bona fide loans. The Annual Restitution Payment shall be made on or before July 31 of each calendar year, starting in calendar year 2002 and continuing for ten years or until their restitution amount is paid in full from any source, whichever occurs sooner. The ten

year restitution period shall run from January 1, 2001 through December 31, 2010. Restitution payments for a calendar year shall take place by July 31 of the following year. Therefore, the final restitution payment for the year 2010 will occur on or before July 31, 2011.

d. Nauman, PAI and FPM agree that the National Futures Association is hereby designated as the Monitor for a period of eleven years commencing January 1, 2001. Notice to the Monitor shall be made to Daniel A. Driscoll, Esq., Executive Vice President, Chief Compliance Officer, or his successor, at the following address: National Futures Association, 200 West Madison Street, Chicago, IL 60606.

e. Nauman, PAI and FPM shall provide a sworn financial statement to the Monitor on June 30 and December 31 of each calendar year, starting June 30, 2002 and continuing through and including June 30, 2011. The financial statement shall provide:

i) a true and complete itemization of all of their rights, title and interest in (or claimed in) any asset, wherever, however and by whomever held;

ii) an itemization, description and explanation of all transfers of assets with a value of $1,000 or more made by or on behalf of them over the preceding six-month interval; and

iii) a detailed description of the source and amount of all their income or earnings, however generated, and a detailed description of any loans, including the amount of the loan, the name and address of the individual or financial institution that provided the loan, the terms of any payment plan regarding repayment of the loan and the outstanding balance of the loan.

Nauman, PAI and FPM shall also provide the Monitor with complete copies of their signed federal income tax returns, including all schedules and attachments thereto (e.g., IRS Forms W-2) and Forms 1099, as well as any filings they are required to submit to any state tax or revenue authority, on or before June 30 of each calendar year, or within (30) days after any extensions provided by the IRS or other tax authority, beginning in 2002 and ending in 2011. If they move their residences at any time they shall provide written notice of their new addresses to the Monitor and the Commission, through the Acting Director, or her successor, Division of Enforcement, Commodity Futures Trading Commission, or her successor, at 1155 21st Street, N.W., Washington, DC 20581, within twenty calendar (20) days thereof.

f. If, during the same time period, Nauman elects to file a joint tax return, he shall provide all documents called for by this paragraph 2, including the signed and filed joint tax return, plus a draft individual tax return prepared on IRS Form 1040 containing a certification by a licensed certified public accountant that the "Income" section (currently lines 7-22 of Form 1040) truly, accurately and completely reflects all of Nauman's income, that the "Adjusted Gross Income" section truly, accurately and completely identifies all deductions that Nauman has a right to claim, and that the deductions contained in the "Adjusted Gross Income" section are equal to or less than 50% or the deductions that Nauman is entitled to claim on the joint tax return; provided however that Nauman may claim 100% of the deductions contained in the "Adjusted Gross Income" section that are solely his. Such individual tax return shall include all schedules and attachments thereto (e.g., IRS Forms W-2) and Forms 1099, as well as any filing required to be submitted to any state tax or revenue authority.

g. Based on the information contained in Nauman's tax returns, bankruptcy filing and other financial records of Nauman, PAI and FPM, the Monitor shall calculate the Annual Restitution Payment to be paid by Nauman, PAI and FPM for that year and the specific amounts payable to each investor. On or before June 30 of each year and starting in calendar year 2002, the Monitor shall send written notice to Nauman, PAI and FPM with instructions to pay the Annual Restitution Payment on or before July 31 of that year to an account designated by the Monitor or, if Nauman or PAI's restitution obligation has been satisfied or otherwise discharged, the amount of civil monetary penalty to be paid in accordance with the payment instructions in Paragraphs 3 and 4, below. If the Monitor determines that an Annual Restitution Payment is due, then the Monitor will increase the amount of the remaining restitution payment by post-judgment interest calculated to the date of payment based on the total remaining restitution obligation pursuant to 28 U.S.C. § 1961. The Monitor shall then disburse any payment by Nauman, PAI and FPM to the investors in the appropriate amounts listed on Attachment A. Based upon the amount of funds available, the Monitor may decide to defer distribution. If at the end of the ten year payment period, any amount of the Annual Restitution Payments has not been distributed, that amount shall instead be immediately paid and applied as a payment to the civil monetary penalty obligation, as provided in Paragraphs 3 and 4, below.

3. CIVIL MONETARY PENALTY: Nauman and PAI shall each pay a contingent civil monetary penalty of $242,431, pursuant to the payment plan outlined in Paragraph 4 below, commencing upon Nauman's or PAI's fulfillment or discharge of their total restitution obligations as set forth in Paragraphs 1 and 2 above. Nauman and PAI shall each make an

annual civil monetary penalty payment ("Annual CMP Payment") following Nauman or PAI's satisfaction or other discharge of their restitution obligations, and continuing until December 31, 2011 (or until the civil monetary penalty is paid in full, if that happens first).[1] Nauman and PAI shall make each such Annual CMP payment by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, made payable to the Commodity Futures Trading Commission, and sent to Dennese Posey, or her successor, Division of Trading and Markets, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, DC 20581, under cover of a letter that identifies Nauman and PAI and the name and docket number of the proceeding; Nauman and PAI shall simultaneously transmit a copy of the cover letter and the form of payment to the Monitor and to the Director, Division of Enforcement, Commodity Futures Trading Commission, at the following address: 1155 21st Street, NW, Washington, DC 20581.

4. ANNUAL PAYMENT: The Annual Payment (the Annual Restitution Payments for Nauman, PAI and FPM and the contingent Annual Civil Monetary Penalty Payments for Nauman and PAI after their full restitution obligation has been satisfied) shall be calculated as follows:

[1] Should the amount due under the payment plan for any Annual Restitution Payment be greater than the balances due on Nauman's or PAI's restitution obligation, the amount due under the payment plan not paid as restitution will constitute their first Annual CMP Payment and be paid as specified above.

a.

| Where Adjusted Gross Income Plus Net Cash Receipts Total: | Percent of total to be paid by Nauman, PAI and FPM is: |
|---|---|
| Under $25,000.00 | 0% |
| $25,000.00 up to and including $50,000.00 | 20% of the amount between $25,000 and $50,000 |
| $50,000.00 up to and including $100,000 | $5,000 (which represents 20% of the amount between $25,00.00 and $50,000.00) plus 30% of the amount between $50,000 and $100,000. |
| Above $100,000 | $20,000 (20% of $25,000 plus 30% of $50,000) plus 40% of the amount above $100,000 |

b. Nauman, PAI and FPM shall cooperate fully and expeditiously with the Monitor and the Commission in carrying out all duties with respect to the restitution and civil monetary penalty payments. They shall cooperate fully with the Monitor and the Commission in explaining their financial income and earnings, status of assets, financial statements, asset transfers and tax returns, and shall provide any financial information concerning themselves as may be required by the Commission and/or the Monitor. Furthermore, Nauman, PAI and FPM shall provide such additional information and documents with respect thereto as may be requested by the Commission and/or the Monitor. Nauman is no longer an officer or employed by PAI, but as the majority shareholder of PAI has the authority to consent to and sign this Order on PAI's behalf.

5. THIRD-PARTY BENEFICIARIES: Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each of the individuals identified in Attachment A is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution amount which has not been paid by defendants, to ensure continued compliance with any provision of this Order and to hold Nauman, PAI and FPM in contempt for any past violations of any provision of this Order.

6. NAUMAN'S BANKRUPTCY PETITION: On December 13, 2000, defendant Nauman filed a petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota, No. 00-45285-NCD. The Commission's claim for restitution in the instant injunctive action was listed as a debt in the bankruptcy filing. The Commission has filed an adversary proceeding opposing the discharge of the Commission's $556,452 restitution claim. CFTC v. Nauman, Adv. Proc. No. 01-4273-NCD (Bankr. D. MN). As part of the instant Consent, defendant Nauman has signed a Stipulation, in the form attached, to entry of an order in the adversary proceeding declaring the Commission's $556, 452 restitution claim non-dischargeable. Within ten days of the entry of the instant Consent Order, the Commission will file the bankruptcy Stipulation in Adv. Proc. No. 01-4273- NCD for entry with the appropriate court. When the appropriate court has entered the bankruptcy Stipulation the Commission will promptly withdraw as a co-plaintiff in a separate adversary proceeding against defendant Nauman that is also pending in the Bankruptcy Court for the District of Minnesota, captioned CFTC and Moratzka v. Nauman, Adv. Proc. No. 01-4272- NCD.

7. COLLATERAL AGREEMENTS: Nauman, PAI and FPM shall immediately notify the Commission and the Monitor if they make or have previously made any agreement with any investor obligating them to make payments outside of this Order. Nauman, PAI and FPM shall also provide immediate evidence of any payments made pursuant to such agreement in the manner required by Paragraph V. 2. d. Upon being notified of any payments made by Nauman, PAI and FPM to investors outside of this Order, the Commission and the Monitor shall reduce and offset Nauman, PAI and FPM's obligation to specified investors, on an annual basis, and make any other changes in the restitution distribution schedule that it deems appropriate.

8. TRANSFER OF ASSETS: Nauman, FPM and PAI shall not transfer or cause others to transfer funds or other property to the custody, possession, or control of any other person for the purpose of concealing such funds from the Court, the Commission, the Monitor or any investor or until the Restitution Amounts have been paid in full.

9. DEFAULT: Any failure by Nauman, PAI and FPM to carry out any of the terms, conditions or obligations under any paragraph of this Order shall constitute an Event of Default. If any Event of Default occurs the Commission (or its designee) shall be entitled to:

a. an order from this Court requiring immediate payment of any unpaid Annual Restitution Payments and/or CMP Payments, or, at the Commission's option, the entire unpaid balance, or any unpaid portion, of the restitution amount and/or civil monetary penalty set forth above in Paragraphs V.1. through 4. above; and/or

b. move the Court for imposition of all other available remedies, including, but not limited to, an order holding Nauman, PAI and FPM in contempt for violation of this Order.

Upon the occurrence of an Event of Default based upon a claim or cause of action that Nauman, PAI and FPM failed to make any Annual Restitution Payments and/or Annual CMP Payments when due, Nauman, FPM and PAI will be barred from asserting any defense, including expiration of any statute of limitations, waiver, estoppel or laches, where such defense is based on the alleged failure of the Commission to pursue such claims or causes of action during the pendency of this civil action, during the negotiation of Nauman, PAI and FPM's Consent to this Order or while this Order remains in effect. The only issue that Nauman, PAI and FPM may raise in defense is whether they have made the Annual Restitution Payments

and/or Annual CMP Payments as directed by the Monitor. Any motion by the Commission for entry of an order pursuant to this paragraph requiring payment of less than the full amount of the restitution and/or civil monetary penalty, set forth in Paragraphs V.1. through 4. above, or any acceptance by the Commission of partial payment of the Annual Restitution Payments and/or Annual CMP Payments made by Nauman, PAI and FPM, shall not be deemed a waiver of the Commission's right to require Nauman, PAI and FPM to make further payments pursuant to the payment plans set forth above, or, in the event of a further Event of Default, a waiver of the Commission's right to require immediate payment of the entire remaining balance, or any unpaid portion, of the restitution amount and/or civil monetary penalty set forth in Paragraphs V. 1. through 4., above.

10. Based upon Nauman's sworn representations in his December 13, 2000 bankruptcy filing in Case No. 45283-NCD, and other evidence provided by Nauman, PAI and FPM to the Commission regarding their financial condition, the Court is not ordering immediate payment of the entire restitution obligation and civil monetary penalty. The determination not to require immediate payment of the entire restitution obligation and civil monetary penalty is contingent upon the accuracy and completeness of Nauman's bankruptcy filing and other evidence provided by Nauman, PAI and FPM regarding their financial condition. If at any time following the entry of this Order, the plaintiff Commission obtains information indicating that Nauman's, PAI's and FPM's representations to the Commission concerning their financial condition were fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made, the Commission may move this Court for an order requiring Nauman, PAI and FPM to make immediate payment of their entire restitution obligation and/or civil monetary penalty, or of any portion thereof, the amount of which shall be determined by the Commission. In connection with

any such motion, the only issues shall be whether the financial information provided by Nauman, PAI and FPM was fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made. In its motion, the Commission may move this Court to consider all available remedies, including, but not limited to, ordering Nauman, PAI and FPM to pay funds or transfer assets or directing the forfeiture of any assets, and the Commission may also request additional discovery. Nauman, PAI and FPM may not, by way of defense to such motion, challenge the validity of their Consent or this Order, or contest any of the findings of fact or conclusions of law set forth in this Order, assert that payment of restitution and/or a civil monetary penalty should not be ordered, or contest the amount of the restitution or civil monetary penalty to be paid. If in such motion the Commission moves for, and the Court orders, payment of less than the full amount of the restitution obligation or the full amount of civil monetary penalty, such motion will not be deemed a waiver of the Commission's right to require Nauman, PAI and FPM to make further payment pursuant to the payment plans set forth above.

## VI.

## MISCELLANEOUS PROVISIONS

A. ENTIRE AGREEMENT, AMENDMENTS and SEVERABILITY. This Order incorporates all of the terms and conditions of the settlement among the parties. Nothing shall serve to amend or modify this Order in any respect whatsoever, unless: (1) reduced to writing, (2) signed by all parties, and (3) approved by order of the Court. If any provision of this Order or the application of any provision or circumstance is held invalid, the remainder of this Order shall not be affected by the holding.

B. WAIVER. The failure of any party at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce

the same or any other provision of this Order. No waiver in one or more instances of the breach of any provision contained in this Order shall be deemed to be, or construed as, a further or continuing waiver of such breach or waiver of the breach of any other provision of this Order.

C. SUCCESSORS AND ASSIGNS. This Order shall inure to the benefit of and be binding on the parties' successors, assigns, heirs, beneficiaries and administrators.

D. JURISDICTION. This Court shall retain jurisdiction of this cause to assure compliance with this Order and for all other purposes related to this action.

E. The Commodity Futures Modernization Act ("CFMA") of 2000, appendix E of Pub. L. No. 106-554, 114 Stat. 2763 (December 20, 2000), does not affect this action because the terms of the CFMA are not applicable to this action and the CFMA was enacted after the activities that gave rise to this action occurred.

This Order shall be binding and irrevocable for forty five days from the date defendants sign it. There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Consent Order of Permanent Injunction and Other Equitable Relief Against Nauman, PAI and FPM.

**ORDERED** this 4th day of March, 2002.

[signature]

UNITED STATES DISTRICT JUDGE

Consented to and
Approved for Entry by:

**DEFENDANTS**

Leonard Nauman
1020 Quebec Avenue North
Golden Valley, MN 55422

Dated: 27 FEB 02

Pension America, Inc. SHAREHOLDER
1020 Quebec Avenue North
Golden Valley, MN 55422

Dated: 27 FEB 02

Futures Profit Making, LLC MANAGER
1020 Quebec Avenue North
Golden Valley, MN 55422

Dated: 27 FEB 02

**PLAINTIFF**

Susan J. Gradman
Trial Attorney

Scott R. Williamson
Deputy Regional Counsel

Commodity Futures Trading Commission
525 West Monroe, Suite 1100
Chicago, IL 60661
Telephone: (312) 596-0523
FAX: (312) 596-0714

Local Counsel:

Joan D. Humes
Attorney Registration No. 214462
Assistant United States Attorney
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Telephone (612) 664-5600
FAX (612) 664-5787

## ATTACHMENT A, PART I
## PENSION AMERICA, INC. RESTITUTIONARY DISTRIBUTION

| Investor Name | Pool Name | Total Cash Investment | Total Prior Cash Distributions | Restitution (Outstanding Balance) | Percent of Restitution Payments to Equalize Return to all investors at 100% |
|---|---|---|---|---|---|
| Janet Martin | FPM | $6,000 | $0 | $6,000 | 1.08% |
| Miriam Peterson | FPM | $5,000 | $0 | $5,000 | 0.90% |
| Mary Ann Sweet | FPM | $7,100 | $0 | $7,100 | 1.27% |
| Juneal Fisk | FPM | $10,000 | $0 | $10,000 | 1.80% |
| Gary Martin Gaurkee | FPM | $18,700 | $0 | $18,700 | 3.36% |
| Betty Belohlavek | FPM | $2,000 | $0 | $2,000 | 0.36% |
| Linda Relf | FPM | $37,000 | $17,000 | $20,000 | 3.59% |
| **Subtotal** | **FPM** | **$85,800** | **$17,000** | **$68,800** | |
| Robert & Bernice Swanson | SFM | $5,000 | $0 | $5,000 | 0.90% |
| Glennis Svendson | SFM | $3,600 | $0 | $3,600 | 0.65% |
| Richard Fredbo | SFM | $33,000 | $5,000 | $28,000 | 5.03% |
| Gerald Labarre | SFM | $8,000 | $0 | $8,000 | 1.44% |
| James Schatzel | SFM | $10,000 | $0 | $10,000 | 1.80% |
| Leo Tautges | SFM | $95,300 | $0 | $95,300 | 17.13% |
| Steve Stefano | SFM | $4,100 | $0 | $4,100 | 0.74% |
| Berith Johnson | SFM | $13,000 | $13,000 | $0 | 0.00% |
| Karen Sweet | SFM | $7,000 | $0 | $7,000 | 1.26% |
| Patricia Kreitz | SFM | $40,000 | $0 | $40,000 | 7.20% |
| Lois Herrington | SFM | $5,000 | $0 | $5,000 | 0.90% |
| **Subtotal** | **SFM** | **$224,000** | **$18,000** | **$206,000** | |
| Gerald Pantzke | CTS | $4,400 | $0 | $4,400 | 0.80% |
| Sam Sherman | CTS | $15,000 | $0 | $15,000 | 2.69% |
| Ron Stellar | CTS | $28,900 | $0 | $28,900 | 5.19% |
| Daryl Sczcech | CTS | $10,000 | $0 | $10,000 | 1.80% |
| Bernard Redinger | CTS | $15,000 | $0 | $15,000 | 2.69% |
| Barbara & Jeffrey Sczcech | CTS | $10,000 | $0 | $10,000 | 1.80% |
| Steve Relf | CTS | $200 | $0 | $200 | 0.04% |
| **Subtotal** | **CTS** | **$83,500** | **$0** | **$83,500** | |
| David Wiltgen | SCT | $50,000 | $0 | $50,000 | 8.95% |
| Maynard & Lenore Lommel | SCT | $10,000 | $0 | $10,000 | 1.80% |
| John Philipi | SCT | $10,000 | $0 | $10,000 | 1.80% |
| Michael Sczcech | SCT | $80,700 | $0 | $80,700 | 14.50% |
| Doug & Carol Larson | SCT | $18,800 | $0 | $18,800 | 3.38% |
| David Lommel | SCT | $30,300 | $1,648.00 | $28,652.00 | 5.15% |
| **Subtotal** | **SCT** | **$199,800** | **$1,648.00** | **$198,152.00** | |
| **TOTAL** | **ALL** | **$593,100** | **$36,648.00** | **$556,452.00** | **100.00%** |

## ATTACHMENT A, PART II
## LEONARD G. NAUMAN RESTITUTIONARY DISTRIBUTION

| Investor Name | Pool Name | Total Cash Investment | Total Prior Cash Distributions | Restitution (Outstanding Balance) | Percent of Restitution Payments to Equalize Return to all investors at 100% |
|---|---|---|---|---|---|
| Janet Martin | FPM | $6,000 | $0 | $6,000 | 1.08% |
| Miriam Peterson | FPM | $5,000 | $0 | $5,000 | 0.90% |
| Mary Ann Sweet | FPM | $7,100 | $0 | $7,100 | 1.27% |
| Juneal Fisk | FPM | $10,000 | $0 | $10,000 | 1.80% |
| Gary Martin Gaurkee | FPM | $18,700 | $0 | $18,700 | 3.36% |
| Betty Belohlavek | FPM | $2,000 | $0 | $2,000 | 0.36% |
| Linda Relf | FPM | $37,000 | $17,000 | $20,000 | 3.59% |
| **Subtotal** | **FPM** | **$85,800** | **$17,000** | **$68,800** | |
| Robert & Bernice Swanson | SFM | $5,000 | $0 | $5,000 | 0.90% |
| Glennis Svendson | SFM | $3,600 | $0 | $3,600 | 0.65% |
| Richard Fredbo | SFM | $33,000 | $5,000 | $28,000 | 5.03% |
| Gerald Labarre | SFM | $8,000 | $0 | $8,000 | 1.44% |
| James Schatzel | SFM | $10,000 | $0 | $10,000 | 1.80% |
| Leo Tautges | SFM | $95,300 | $0 | $95,300 | 17.13% |
| Steve Stefano | SFM | $4,100 | $0 | $4,100 | 0.74% |
| Berith Johnson | SFM | $13,000 | $13,000 | $0 | 0.00% |
| Karen Sweet | SFM | $7,000 | $0 | $7,000 | 1.26% |
| Patricia Kreitz | SFM | $40,000 | $0 | $40,000 | 7.20% |
| Lois Herrington | SFM | $5,000 | $0 | $5,000 | 0.90% |
| **Subtotal** | **SFM** | **$224,000** | **$18,000** | **$206,000** | |
| Gerald Pantzke | CTS | $4,400 | $0 | $4,400 | 0.80% |
| Sam Sherman | CTS | $15,000 | $0 | $15,000 | 2.69% |
| Ron Stellar | CTS | $28,900 | $0 | $28,900 | 5.19% |
| Daryl Sczcech | CTS | $10,000 | $0 | $10,000 | 1.80% |
| Bernard Redinger | CTS | $15,000 | $0 | $15,000 | 2.69% |
| Barbara & Jeffrey Sczcech | CTS | $10,000 | $0 | $10,000 | 1.80% |
| Steve Relf | CTS | $200 | $0 | $200 | 0.04% |
| **Subtotal** | **CTS** | **$83,500** | **$0** | **$83,500** | |
| David Wiltgen | SCT | $50,000 | $0 | $50,000 | 8.95% |
| Maynard & Lenore Lommel | SCT | $10,000 | $0 | $10,000 | 1.80% |
| John Philipi | SCT | $10,000 | $0 | $10,000 | 1.80% |
| Michael Sczcech | SCT | $80,700 | $0 | $80,700 | 14.50% |
| Doug & Carol Larson | SCT | $18,800 | $0 | $18,800 | 3.38% |
| David Lommel | SCT | $30,300 | $1,648.00 | $28,652.00 | 5.15% |
| **Subtotal** | **SCT** | **$199,800** | **$1,648.00** | **$198,152.00** | |
| **TOTAL** | **ALL** | **$593,100** | **$36,648.00** | **$556,452.00** | **100.00%** |

## ATTACHMENT A, PART III
## FUTURES PROFIT MAKING, LLC RESTITUTIONARY DISTRIBUTION

| Investor Name | Pool Name | Total Cash Investment | Total Prior Cash Distributions | Restitution (Outstanding Balance) | Percent of Restitution Payments to Equalize Return to all investors at 100% |
|---|---|---|---|---|---|
| Janet Martin | FPM | $6,000 | $0 | $6,000 | 9.00% |
| Miriam Peterson | FPM | $5,000 | $0 | $5,000 | 7.30% |
| Mary Ann Sweet | FPM | $7,100 | $0 | $7,100 | 11.00% |
| Juneal Fisk | FPM | $10,000 | $0 | $10,000 | 15.00% |
| Gary Martin Gaurkee | FPM | $18,700 | $0 | $18,700 | 28.00% |
| Betty Belohlavek | FPM | $2,000 | $0 | $2,000 | 0.30% |
| Linda Relf | FPM | $37,000 | $17,000 | $20,000 | 29.00% |
| **TOTAL** | **FPM** | **$85,800** | **$17,000** | **$68,800** | **100%** |

ATTACHMENT A, PART IV
RESTITUTIONARY DISTRIBUTION – NAMES AND ADDRESSES

Betty Belohlavek
5707 Highway 7
Minneapolis, MN 55416-2379

Juneal Fisk
6087 D Courtly Alcove
Woodbury, MN 55125

Richard Fredbo
5252 337th Ave., NW
Cambridge, MN 55008-7424

Gary Martin Gaurkee
2343 135th Ave., NW
Andover, MN 55304

Lois Herrington
R. R. 2 Box 360A
Longville, MN 56655

Partricia Kreitz
992 West Burke
Roseville, MN 55113

Jerald Labarre
8761 Meadowvale Drive
Eden Prairie, MN 55347-2322

Doug & Carol Larson
30761 Heather St., NW
Isanti, MN 55040

David Lommel
19359 East Shore Dr.
Kimball, MN 55353-9779

Maynard & Lenore Lommel
19359 East Shore Dr.
Kimball, MN 55353-9779

Janet Martin
2600 13th St., South
St. Cloud, MN 56301

Gerald Pantzke
40361 County Road 1
Rice, MN 56367

Miriam Peterson
1072 East Gordon Ave.
St. Paul, MN 55109

John Philipi
3835 40th St., South
St. Cloud, MN 56301

Bernard Redinger
S 9880 Minnesota Drive
Eleva, WI 54738

Linda Relf
773 Holden Lane
Hudson, WI 55439

Steven Relf
3 Dellwood Lane
St. Paul, MN 55128

James Schatzel
3933 Bellaire Ave.
White Bear Lake, MN 55110

Barbara & Jeffrey Sczcech
722-339th Ave., NE
Cambridge, MN 55008

Daryl Sczcech
38669 Lily St., NW
Stanchfield, MN 55080

Michael Sczcech
34707 Larch Dr., NW
Cambridge, MN 55008

Sam Sherman
P.O. Box 126
Westport, NY 12993

Steve Stefano
4212 Bridgewood Terrace
St. Paul, MN 55127-7805

Ron Stellar
1646 115th St.
Chippewa Falls, WI 54729

Glennis Svendson
2300 Fieldstone Dr.
Mendota Heights, MN 55120-1920

Robert & Bernice Swanson
1177 Edgewater Blvd.
St. Paul, MN 55119

Karen Sweet
16043 First St., North
Lakeland, MN 55043-9517

Mary Ann Sweet
350 Oakwood Dr. #12
New Brighton, MN 55112

Leo Tautges
5483 Spencer Road North
Brainerd, MN 56401

David Wiltgen
111-1st Ave., West
P.O. Box 507
Foley, MN 56329

## ATTACHMENT A, PART V

## LEONARD G. NAUMAN RESTITUTIONARY DISTRIBUTION FOR SCT AND CTS ACCOUNTS AT LIND WALDOCK

| Investor Name | Pool Name | Total Cash Investment | Total Prior Cash Distributions | Restitution (Outstanding Balance) | Percent of Restitution Payments to Equalize Return to all investors at 100% | Distribution (percentage of $13,153.37) |
|---|---|---|---|---|---|---|
| Gerald Pantzke | CTS | $4,400 | $0 | $4,400 | 1.57% | $207 |
| Sam Sherman | CTS | $15,000 | $0 | $15,000 | 5.32% | $700 |
| Ron Stellar | CTS | $28,900 | $0 | $28,900 | 10.27% | $1,351 |
| Daryl Sczcech | CTS | $10,000 | $0 | $10,000 | 3.55% | $467 |
| Bernard Redinger | CTS | $15,000 | $0 | $15,000 | 5.32% | $700 |
| Barbara & Jeffrey Sczcech | CTS | $10,000 | $0 | $10,000 | 3.55% | $467 |
| Steve Relf | CTS | $200 | $0 | $200 | 0.07% | $9 |
| **Subtotal** | **CTS** | **$83,500** | **$0** | **$83,500** | | |
| David Wiltgen | SCT | $50,000 | $0 | $50,000 | 17.75% | $2,335 |
| Maynard & Lenore Lommel | SCT | $10,000 | $0 | $10,000 | 3.55% | $467 |
| John Philipi | SCT | $10,000 | $0 | $10,000 | 3.55% | $467 |
| Michael Sczcech | SCT | $80,700 | $0 | $80,700 | 28.65% | $3,768 |
| Doug & Carol Larson | SCT | $18,800 | $0 | $18,800 | 6.68% | $878 |
| David Lommel | SCT | $30,300 | $1,648.00 | $28,652.00 | 10.17% | $1,337 |
| **Subtotal** | **SCT** | **$199,800** | **$1,648.00** | **$198,152.00** | | |
| **TOTAL** | **ALL** | **$283,300** | **$1,648.00** | **$281,652.00** | **100.00%** | $13,153 |